T.C. Memo. 1999-93


UNITED STATES TAX COURT


MELISSA S. SPRANGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8485-97.                    Filed March 25, 1999.


Melissa S. Spranger, pro se.

<u>Eric R. Skinner</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986, as amended and in effect at the time the petition was filed, and Rules 180, 181, and 182 of the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 1993.

Respondent determined a deficiency in petitioner's 1993 Federal income tax in the amount of $6,426. The issue for decision is whether petitioner is entitled to various deductions claimed on a Schedule C included with her 1993 Federal income tax return. The resolution of this issue depends upon whether, during 1993, petitioner's dog breeding activity constituted a trade or business within the meaning of section 162.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner filed a timely 1993 Federal income tax return. On that return, petitioner computed her taxable income and Federal income tax liability in accordance with the cash receipts and disbursements method of accounting. At the time that the petition was filed, she resided in Omaha, Nebraska.

During 1993 petitioner was employed as a building official/inspector by the City of Gross Pointe Woods, Michigan. Her work schedule was somewhat irregular; however, she routinely worked between 40 and 60 hours per week. She received and properly reported wage income in the amount of $40,306 from this employment.

As of the date of trial, petitioner had been involved in breeding and showing Pomeranian dogs for over 30 years. Her interest in Pomeranian dogs arose when she was only 10 years old. For Federal income tax purposes, in 1989 she and her former husband began reporting income earned and expenses paid in connection with this activity on Schedules C included with their

Federal income tax returns.  Petitioner and her former husband separated in 1993 and were divorced in 1994.

From 1989 through the date of trial, petitioner never realized or reported on a Federal income tax return a net profit from the activity.  The income and expenses with respect to the activity reported on petitioner's Federal income tax returns from 1993 through 1996, inclusive, are summarized in the following table:

| Year | Income | Expenses | Net Loss |
|------|--------|----------|----------|
| 1993 | $ 525 | $29,142 | $28,617 |
| 1994 | 375 | 19,111 | 18,736 |
| 1995 | 350 | 14,670 | 14,320 |
| 1996 | 250 | 7,104 | 6,854 |

On her 1993 Schedule C petitioner reported the following items:

| Income | | $525 |
|--------|--------|--------|
| Expenses | | |
| Advertising | $  891 | |
| Depreciation | 7,903 | |
| Insurance | 1,932 | |
| Interest | 4,196 | |
| Repairs | 2,431 | |
| Supplies | 3,616 | |
| Tax | 254 | |
| Travel, etc | 5,071 | |
| Other | 2,848 | 29,142 |
| Net loss | | 28,617 |

During 1993 petitioner owned 28 dogs. Some of the above expenses related to the maintenance (including feeding, grooming, and veterinarian services) of those dogs. The dogs were kept in an addition to petitioner's residence that was constructed for that purpose.

The $525 of income petitioner reported on the Schedule C consists of a single stud fee ($150) and the sale of one puppy ($375). Stud fees and puppy sales are the only ways in which petitioner expected to generate income from her dog breeding activity.

Dog breeders gain recognition for themselves and their dogs by entering their dogs in shows sanctioned by the American Kennel Club and sponsored by various organizations. Dogs that have successfully competed in shows attract customers interested in obtaining stud services or purchasing puppies from dogs owned by the breeders.

During 1993 petitioner entered only five of her dogs in various shows. The shows were held at various locations in different states. Some shows were scheduled in clusters over a three or four-day period. Typically petitioner was required to pay a fee to enter her dogs in a show. The shows did not award cash prizes to the winners. As explained above, the financial reward for winning came in the form of enhancing the winner's reputation for breeding purposes, which in turn resulted in more demand and higher fees for the breeding services of the winner.

Petitioner traveled to the dog shows with an associate in petitioner's 1989 Fleetwood motor home. Petitioner purchased the motor home in 1989 for $36,897. On the Schedule C included with her 1993 return, petitioner indicated that the motor home was used exclusively in her dog breeding business.

Petitioner also owned a 1993 Ford Bronco that was purchased in 1992 for $36,998. On the Schedule C included with her 1993 return, she indicated that 83 percent of the usage of the Bronco was attributable to her dog breeding activity. Petitioner used the Bronco to commute to her job with Gross Pointe Woods, a distance of over 30 miles from her residence.

Petitioner did not keep a separate set of books and records for her dog breeding activity. Some of the expenses relating to the activity were paid from a personal joint checking account that petitioner maintained with her former husband. She also kept copies of receipts for some of the expenses related to her dog breeding activity. Because of complications related to her divorce, petitioner cannot locate the relevant check registers or any receipts.

Since 1989, only five of petitioner's dogs generated any income. Petitioner did not maintain any records that tracked income and expenses attributable to a particular dog. She did not develop a business plan for the year in issue, or for any other year. Petitioner never consulted with any professionals in order to develop a strategy that would allow her to profit from her dog breeding activity, nor did she alter her practices from

one year to the next in order to increase the likelihood for profit. Petitioner never had her dogs appraised, and she did not insure them.

Relevant for our purposes, in the notice of deficiency, respondent disallowed the net loss reported on the Schedule C. Respondent explained the disallowance as follows: "It is determined that the Schedule C loss pertaining to your dog operations was not incurred in transactions entered into for profit. Therefore, the loss of $28,617.00 shown on your return is not allowable."

OPINION

Deductions are a matter of legislative grace. A taxpayer who claims a deduction must identify the specific statute that allows for the type of deduction claimed and demonstrate that all of the requirements of the statute have been satisfied. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Although not expressly referred to by petitioner, it is clear that in this case petitioner relies upon section 162(a) in support of the deductions here in dispute.

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The term "trade or business" is not precisely defined in the Internal Revenue Code or the regulations promulgated thereunder; however, it is well established that in order for an activity to be considered a

taxpayer's trade or business for purposes of section 162, the activity must be conducted "with continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Consistent with the manner in which petitioner reported the income and expenses attributable to petitioner's dog breeding activity on her 1993 Federal income tax return, she argues that she engaged in that activity during 1993 with the intent to make a profit, and therefore the activity constitutes a trade or business. She further points out that her return for taxable year 1989 was examined and respondent allowed her to treat the dog breeding activity as a trade or business.

Respondent argues that petitioner's dog breeding activity did not constitute a trade or business during 1993 because petitioner did not engage in that activity with the requisite intent to profit. Consequently, according to respondent, petitioner is only entitled to deduct the expenses related to petitioner's dog breeding activity as allowable under section 183.

The test of whether a taxpayer conducted an activity for profit is whether he or she entered into, or continued, the activity with an actual or honest objective of making a profit. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Although a reasonable expectation of profit on taxpayer's part is not required, the profit objective must be bona fide, as determined from a consideration of the surrounding facts and circumstances.  Keanini v. Commissioner, supra at 46; Dreicer v. Commissioner, supra at 645; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Whether petitioner engaged in her dog breeding activity with an actual and honest objective of realizing a profit must be redetermined year-to-year, taking into account all of the relevant facts and circumstances.  Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs.  More weight is given to objective facts than to petitioner's statement of her intent.  Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(a), Income Tax Regs.  Respondent's determinations with respect to other years, if any, may be taken into account but are not conclusive.

The following factors, which are nonexclusive, should be considered in the determination of whether an activity is engaged in for profit:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities;

(6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.

No one factor is determinative in and of itself, and our conclusion with respect to petitioner's profit motive does not depend upon merely counting up those factors that suggest the presence of a profit motive and comparing the number to those factors that indicate the opposite. Sec. 1.183-2(b), Income Tax Regs.

Taking into account the above factors and considering the facts and circumstances relating to petitioner's dog breeding activity, as discussed more fully below, we are not persuaded that during 1993 petitioner engaged in that activity with the intent to profit that is necessary to consider the activity a trade or business for purposes of section 162. The activity did generate gross income; however, not all income producing activities constitute trades or businesses within the meaning of section 162(a). Cf. Commissioner v. Groetzinger, supra at 35.

For the year in issue, the great majority of expense deductions attributable to petitioner's dog breeding activity were related to the Fleetwood motor home and Bronco that petitioner owned. Deductions for the fixed costs of the those vehicles, including depreciation, interest and insurance, totaled $14,020. Deductions for the marginal costs attributable to those

vehicles, including repairs, maintenance and actual travel expenses, totaled $7,402. The marginal costs alone exceeded the income from the activity by a factor of 12.

We are particularly influenced by petitioner's failure to consider the extent of stud fees and puppy sales necessary to cover not only the costs of operating the motor home and truck, but the other expenses related to the activity as well. She did not develop a business plan, or prepare a break-even analysis. Nor did she record the particular income earning history of any of her dogs, so that the profit potential of the activity could be better evaluated. The following portion of petitioner's cross examination demonstrates the complete lack of the type of planning that is indicative of an activity engaged in for profit:

Q. Prior to the time when you began deducting losses for your dog activity, did you ever prepare a business plan?

A. No, sir.

Q. Between 1989 and -- well, until now, have you ever prepared any profit or loss statements other than a final tallying for your tax returns?

A. No, sir.

Q. Did you ever prepare a break-even analysis or any projections of what you might have to earn to make a profit?

A. No.

Q. Did you prepare any budgets for the activity?

A. No, sir.

Q. Okay. Just based upon your history of losses in the activity, how much would you have to earn this year to make a profit on the activity as a whole?

A.  With the prior years and losses?

Q.  Yeah.

A.  I would have no idea off the top of my head.

*  *  *

Q.  During 1989 and subsequent years for the business, did you keep any records that would show the expenditures made with respect to any individual dog?

A.  No, sir.

Q.  Okay.  Did you make any attempt, since 1989 and subsequent years, to apportion the expenses to determine how much each animal was costing you?

A.  No, sir.

Since 1989 only five of petitioner's dogs generated any income, although she owned 28 dogs during 1993, and deducted the costs of maintaining all of those dogs.  Petitioner has an obvious interest in owning, raising, and showing Pomeranian dogs; however, we find that during the year in issue, her interest, which developed when she was a child, was personal in nature and not based upon the necessary profit motive that would allow for the activity to be considered a trade or business within the meaning of section 162(a).  Of course, deriving personal satisfaction out of an activity does not necessarily indicate the absence of an intent to profit; however, "where the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity."  Smith v. Commissioner, T.C. Memo. 1997-503 (citing

Burger v. Commissioner, T.C. Memo. 1985-523); Sec. 1.183-2(b)(9), Income Tax Regs. Weighing the personal pleasures derived from petitioner's involvement with her dogs against the profit potential that could result from her breeding activity, we are satisfied that the breeding activity was conducted more for the purpose of subsidizing the costs of maintaining and showing her dogs than for profit.

Our conclusion on the point is further supported by the history of losses incurred by petitioner since she began treating the activity as a trade or business for Federal income tax purposes. "[W]here losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, * * * may be indicative that the activity is not being engaged in for profit." Sec. 1.183-2(b)(6), Income Tax Regs. During 1993, petitioner deducted a $28,617 loss attributable to her dog breeding activity. Since 1989, when petitioner began reporting the income and expenses attributable to her dog breeding activity, she has never realized a profit. Over a 4-year period starting in 1993, expenses exceeded income by almost $60,000. During that period annual income ranged from a low of $250 to a high of $575. The magnitude of annual and cumulative losses compared to the low levels of income generated strongly indicates that petitioner did not conduct the activity for profit. Smith v. Commissioner, supra; Burger v. Commissioner, supra.

Because petitioner's dog breeding activity was not an activity engaged in for profit, the activity cannot be considered a trade or business for purposes of section 162(a). Therefore, she is only entitled to deduct the expenses incurred in that activity in accordance with section 183. It follows, and we hold, that respondent's determination in this regard is sustained.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.